(No. 2906—

ELLIS JOHNSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 16, 1938.*

JOSEPH W. KOUCKY, for claimant.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For some time prior to, and on the 6th day of March, A. D. 1936, the claimant was in the employ of the respondent as an attendant at the Chicago State Hospital, Chicago, Illinois. On said date he was employed in the violent ward, and while attempting to separate two patients who were fighting, he was knocked down and sustained a colles fracture of the left wrist.

He was taken to the institution hospital where he was treated by Dr. Rooney and Dr. Meany of the institution; the arm was placed in a cast, and claimant remained in the hospital until April 5th, 1936, on which date the cast was removed and replaced by a splint. Claimant returned to his regular work on the same day, with his arm in a splint, but continued to receive diathermy and massage treatments for some time thereafter. All medical and hospital services were furnished by respondent, and claimant was paid his regular salary during the time he was off work.

The evidence clearly shows that claimant and respondent were both operating under the provisions of the Workmen's Compensation Act, and that the injuries sustained by the claimant arose out of and in the course of his employment.

His annual earnings during the year preceding the injury were $936.00, and his average weekly wage was $18.00.

Claimant at the time of the injury in question was married and had one child under sixteen years of age.

The only question in the case is the extent of the injury to claimant's left wrist. Dr. Rooney of the institution was one of the treating physicians, and testified on behalf of the respondent. He stated that it usually takes a year or a year and a half for a condition of this kind to return to normal. He examined the claimant on November 1, 1937 and from such examination testified, without objection, that the claimant has sustained the permanent loss of twenty-five per cent (25%) of the use of his left hand.

Dr. Adams who was called on behalf of the claimant, examined him for the purpose of testifying in the case, and testified, without objection, that on May 18, 1936 claimant has a loss of seventy-five per cent (75%) of the use of the hand, but that such condition was not permanent. He also testified, without objection, that at the time of the first hear-

ing, to wit, on July 23, 1936, claimant had a loss of fifty per cent (50%) of the use of the hand, and that such condition is permanent.

Under all the evidence in the case, together with the inferences which may legitimately be drawn therefrom, we are of the opinion that the disability to claimant's hand does not exceed 25%.

We find, therefore, that the claimant was temporarily totally disabled from the date of the injury to April 5, 1936, and that he sustained the permanent loss of 25% of the use of his left hand; that under the provisions of Section 8, Paragraphs (b), (c), (e) and (i) of the Compensation Act, claimant is entitled to receive three and one-seventh weeks' compensation at $11.00 per week for temporary total disability as aforesaid, and 42-½ weeks' compensation at $11.00 per week for the permanent loss of 25% of the use of his left hand; making a total of $502.07;—all of which compensation has accrued at this time. From this must be deducted the sum of $78.00 which was paid to claimant for non-productive time, as hereinbefore set forth, and which must therefore be considered compensation.

Award is therefore entered in favor of the claimant for the sum of Four Hundred Twenty-four Dollars and Seven Cents ($424.07).

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved July 3d, 1937 (Session Laws 1937, p. 83) and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided for in such Act.